# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
04/29/2019
CT Log Number 535382098

TO:      Joel Lackey, President
National Credit Systems Inc.
3750 Naturally Fresh Blvd
Atlanta, GA 30349-2964

RE:      **Process Served in Florida**

FOR:     National Credit Systems, Inc.  (Domestic State: GA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RHONDA JONES, PLTF. vs. NATIONAL CREDIT SYSTEMS, INC., DFT. |
| **DOCUMENT(S) SERVED:** | COMPLAINT, SUMMONS, EXHIBIT(S) |
| **COURT/AGENCY:** | Clay County Circuit Court, FL<br>Case # 2019CA398 |
| **NATURE OF ACTION:** | (Fair Credit Reporting Act, 15 U.S.C, S 1681n ) |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/29/2019 at 12:25 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service of this summons on that defendant, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Thomas R. Pycraft<br>PYCRAFT LAW, LLC<br>2200 N. PONCE DE LOAN BLVD #10<br>ST. AUGUSTINE, FL 32084<br>904-940-0060 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/29/2019, Expected Purge Date: 05/04/2019<br><br>Image SOP<br><br>Email Notification, Joel Lackey  jlackey@nationalcreditsystems.com<br><br>Email Notification, Ron V Sapp  rsapp@nationalcreditsystems.com<br><br>Email Notification, KATIE MARCH  kmarch@nationalcreditsystems.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>1200 South Pine Island Road<br>Plantation, FL 33324<br>954-473-5503 |

Page 1 of  1 / SV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



Filing # 87442322 E-Filed 04/03/2019 07:16:41 PM

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT,
IN AND FOR CLAY COUNTY, FLORIDA

RHONDA A. JONES,
    Plaintiff,

vs.

CASE NO: 2019·CA·398

NATIONAL CREDIT SYSTEMS, INC.,
    Defendants.

_____/

DATE: 4-29-19
HOUR: 11:45AM
DEPUTY SHERIFF

**SUMMONS**

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on the defendant:

**NATIONAL CREDIT SYSTEMS, INC.**
**c/o CT Corporation System**
**1200 South Pine Island Road**
**Plantation, FL 33324**

Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, **Adam Thoresen, whose address is 126 W. Adams Street, Jacksonville, Florida 32202,** within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on Plaintiffs' attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on April 4 , 2019.

**TARA S. GREEN**

As Clerk of the Court

By _____

As Deputy Clerk

## IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
## IN AND FOR CLAY COUNTY, FLORIDA

RHONDA JONES,

      Plaintiffs,

v.

NATIONAL CREDIT SYSTEMS, INC.

      Defendants

_____/

CASE NO: _____
DIVISION: _____

DATE: 4-09-19
HOUR: 11:50 am
DEPUTY SHERIFF

## COMPLAINT

**COMES NOW**, the Plaintiff, RHONDA JONES, by and through her undersigned counsel, and hereby sues the Defendant, National Credit Systems, Inc. ("NCS"), and alleges:

### PRELIMINARY STATEMENT

1.     This is an action for damages, costs and attorney's fees for Defendant's violation of the Florida Consumer Collections Practices Act, Fla. Stat. § 559.72 ("FCCPA"), the Fair Debt Collection Practices Act, 15 U.S.C., § 1692 *et seq.*, ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C., § 1681 *et seq.*, ("FCRA").

### PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff is an individual residing in Duval County, Florida.

3.     NCS is a foreign corporation that engages in the business of collecting debts. Its principal place of business is in the State of Georgia. It does business in the State of Florida, in particular Clay County, FL.

4.     NCS is a "Debt Collector" as defined by the FDCPA and the FCCPA.



5.      NCS is a "Person" as contemplated by the FCCPA, Fla. Stat. 559.72, and as defined by the FCRA, 15 U.S.C. § 1681a(b).

6.      NCS furnishes information to consumer reporting agencies under FCRA, 15 U.S.C. § 1681s-2, and is a furnisher of credit information as described by the FCRA.

7.      Plaintiff is a consumer as defined by the FCRA, FDCPA and FCCPA.

8.      Venue is proper as the causes of action accrued in Clay County Florida and the Defendant engages in business in the state of Florida, in particular, Clay County.

9.      The amount in controversy is within the jurisdiction of this Court in that Plaintiff's good faith estimate of damages exceeds $15,000.00 exclusive of costs and attorney's fees.

10.     All conditions precedent to the institution and maintenance of this action have been performed, satisfied or otherwise waived.

## FACTUAL ALLEGATIONS

11.     On October 20, 2017 Plaintiff's former property management company, Princeton Management, filed an eviction action against Plaintiff in Duval County Court, Case Number 17-CC-12952 (the "Eviction"), for allegedly failing to pay rent.

12.     On November 15, 2017 Princeton Management filed a Voluntary Dismissal of the Eviction.

13.     Plaintiff's lease agreement (the "Lease") naturally expired on October 31, 2017 and Plaintiff provided her landlord with written notice of her intent not to renew the Lease.  Pursuant to her notice, Plaintiff timely vacated the property on or before October 31, 2017 with all rents paid and otherwise in compliance with her lease.  (The Lease is attached as Exhibit "A").



14.     On or about April 4, 2018 NCS sent a letter to Plaintiff claiming she owed $375.86 (the "Debt") related to her Lease and her former tenancy at the Preserve at Cedar River. (The April 4, 2018 letter is attached as Exhibit "B").

15.     NCS thereafter began furnishing false information, including that Plaintiff owed the Debt, to the nationwide consumer reporting agencies Experian, TransUnion and Equifax, to be reported on Plaintiff's consumer reports.

16.     On June 28, 2018, Plaintiff wrote a letter to NCS (the "Validation Letter"), through her attorney, disputing the Debt and asking that NCS not take any further action to collect the Debt, including credit reporting, until such time as it had been verified. (See Exhibit "C").

17.     On June 28, 2018 Plaintiff made a written dispute ("First Dispute") to Experian, TransUnion and Equifax disputing the factual accuracy of the Debt information being furnished by NCS and requesting investigation and removal of the Debt from her consumer report.

18.     Experian, TransUnion and Equifax communicated the First Dispute to NCS.

19.     The First Dispute included evidence and attachments showing the fact that the Eviction had been dismissed, that Plaintiff had complied with her lease in all material respects and that Plaintiff did not owe the Debt NCS was trying to collect.

20.     NCS verified the Debt as accurate and, as a result, information about the Debt continued to appear on Plaintiff's consumer reports.

21.     On July 10, 2018, NCS sent a response to the Validation Letter again demanding payment of the Debt and enclosing an account ledger and a copy of the Lease.

22.     The account ledger doesn't match the amount demanded by NCS and, furthermore, the account ledger clearly identifies the $375.86 Debt as "LEG" and "eviction file" indicating the charges are for eviction costs and fees from the dismissed Eviction.

-3-



23.     On August 13, 2018 Plaintiff made another written dispute ("Second Dispute") to Experian, TransUnion and Equifax again disputing the factual accuracy of the Debt information being furnished by NCS and reported on her consumer report and requesting investigation and removal.

24.     Plaintiff included additional information and documents with the Second Dispute that she did not have at the time of the First Dispute in order to further support her position and assist with the investigation process.

25.     Experian, TransUnion and Equifax communicated the Second Dispute to NCS.

26.     NCS again verified the Debt as accurate and, as a result, information regarding the Debt continued to appear on Plaintiff's consumer reports.

27.     Through the date of filing this complaint NCS has refused to remove the false and derogatory entries from the Plaintiff's consumer report and continues to furnish false information regarding the Debt to various consumer reporting agencies.

## COUNT I

### (Fair Credit Reporting Act, 15 U.S.C. § 1681n )

28.     Plaintiffs re-allege the allegations contained in paragraphs 1 through 27 above as if fully set forth herein.

29.     This is a cause of action for willful noncompliance by Defendant with the provisions of the FCRA.

30.     Plaintiff has complied with all requests of Defendant, and Defendant willfully failed to comply with the requirements imposed under the FCRA, including but not limited to:

> a)  By willfully failing to conduct an adequate investigation or reinvestigation of Plaintiff's disputes, including failing to adequately



consider, review or forward all relevant information provided by the consumer or consumer reporting agency as part of the disputes and by failing to take appropriate corrective actions once the outcome of the investigation was known or should have been known to Defendant;

b) By willfully failing to have proper procedures in place that would delete or correct incomplete, inaccurate, or non-verifiable information being furnished by Defendant;

c) By willfully failing to adequately communicate with the original creditor as part of the investigation into Plaintiff's dispute to see if the information provided by Plaintiff could be verified or substantiated;

d) By willfully obtaining Plaintiff's consumer report without a permissible purpose.

31.     Subparagraphs "a-c" above constitute a lack of compliance with the requirements of 15 U.S.C. § 1681s-2(b).

32.     Subparagraph "d" above constitutes a violation of 15 U.S.C. § 1681(b).

33.     Plaintiff has suffered and continues to suffer damages as a result of Defendant's violations of the FCRA, including denial of housing, damage to reputation, invasion of privacy, distress, frustration, embarrassment, humiliation, and lost opportunity to receive credit all in an amount to be determined by the jury.

34.     Plaintiff is entitled to statutory damages and punitive damages in an amount to be determined by the jury.

35.     Plaintiff is entitled to her costs and attorney's fees, pursuant to 15 U.S.C. § 1681n(a).

## COUNT II

### (Fair Credit Reporting Act, 15 U.S.C. §1681o)

36.     Plaintiffs re-allege the allegations contained in paragraphs 1 through 27 above as if fully set forth herein.

37.     This is a cause of action for negligent noncompliance by Defendant with the provisions of the FCRA.

38.     Plaintiff has complied with all requests of Defendant, and Defendant negligently

failed to comply with the requirements imposed under the FCRA, including but not limited to:

     e)  By negligently failing to conduct an adequate investigation or reinvestigation of Plaintiff's disputes, including failing to adequately consider, review or forward all relevant information provided by the consumer or consumer reporting agency as part of the disputes and by failing to take appropriate corrective actions once the outcome of the investigation was known or should have been known to Defendant;

     f)  By negligently failing to have proper procedures in place that would delete or correct incomplete, inaccurate, or non-verifiable information being furnished by Defendant;

     g)  By negligently failing to adequately communicate with the original creditor as part of the investigation into Plaintiff's dispute to see if the information provided by Plaintiff could be verified or substantiated;

     h)  By negligently obtaining Plaintiff's consumer report without a permissible purpose.

39.     Subparagraphs "a-c" above constitute a lack of compliance with the requirements

of 15 U.S.C. § 1681s-2(b).

40.     Subparagraph "d" above constitutes a violation of 15 U.S.C. § 1681(b).

41.     Plaintiff has suffered and continues to suffer damages as a result of Defendant's

violations of the FCRA, including denial of housing, damage to reputation, invasion of privacy,

distress, frustration, embarrassment, humiliation, and lost opportunity to receive credit all in an

amount to be determined by the jury.

42.     Plaintiff is entitled to her costs and attorney's fees, pursuant to 15 U.S.C. § 1681o(a)

## COUNT III

### (Violation of the Florida Consumer Collection Practices Act)

43.     Plaintiffs re-allege the allegations contained in paragraphs 1 through 27 above as if

fully set forth herein.

44.     Section 559.72(9), Florida Statutes, provides,



In collecting consumer debts, no person shall: (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

45.     The Debt is a Consumer Debt as defined in the statute.

46.     Defendant violated Fla. Stat. 559.72(9) by Sending dunning letters on April 4, 2018 and subsequently on July 10, 2018 seeking payment for attorney's fees and costs related to the Eviction matter that was voluntarily dismissed and in which attorney's fees and costs were never assessed.

47.     Defendant knew that the amount it listed in the dunning letter was not collectable or owed by Defendant.

48.     Plaintiff has suffered and continues to suffer actual damages as a result of Defendant's violation of the FCCPA including but not limited to, worry, fear, distress, frustration, embarrassment, and humiliation, all in amounts to be determined by the jury.

49.     Plaintiff is entitled to her actual damages, statutory damages and attorney's fees pursuant to Section 559.77, Florida Statutes.

50.     Pursuant to Section 768.72, Florida Statutes. Plaintiff reserves the right to amend this Complaint to add a prayer for punitive damages.

## COUNT IV

### (Violation of the Fair Debt Collections Practices Act)

51.     Plaintiff re-allege the allegations contained in paragraphs 1 through 27 above as if fully set forth herein.

52.     This is a cause of action pursuant to the Federal Fair Debt Collection Practices Act ("FCRA"), 15 U.S.C. § 1692 et seq. for noncompliance by Defendant with the provisions of the FDCPA.

53.     The alleged debt is a consumer Debt as defined by 15 U.S.C. § 1692a of the FDCPA.

54.     NCS violated the FDCPA in at least the following ways:

   a.   By attempting to collect a debt that is not authorized by agreement or permitted by law, including but not limited to, sending collection letter and reporting the Debt to third parties with knowledge, or reason to know, that Plaintiff did not owe the Debt, in violation of 15 U.S.C. §1692(f)(1);

   b.   by misrepresenting the character and legal status of the Debt it knew or should have known was not owed by Plaintiff, in violation of §1692e(2)(A);

   c.   by communicating or threatening to communicate credit information about the Debt to Equifax, Experian and TransUnion when NCS knew or should have known it was false, in violation of §1692e(8);

55.     Plaintiff has suffered and continues to suffer damages as a result of Defendant's violations of the FDCPA including but not limited to, worry, fear, distress, frustration, embarrassment, and humiliation, all in amounts to be determined by the jury.

56.     Pursuant to 15 U.S.C. § 1692(k), Plaintiff is entitled to recover her actual damages, statutory damages, costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff hereby respectfully request this Court enter Judgment in favor of the Plaintiff and against the Defendant as follows:

1. On Count I:

   a. Actual and/or statutory damages in an amount to be determined by the jury;

   b. Punitive damages in an amount to be determined by the jury; and

   c. Attorney's fees and costs.

2. On Count II:

   a. Actual damages in an amount to be determined by the jury; and

   b. Attorney's fees and costs.

3. On Count IV:

   a. Actual and/or statutory damages in an amount to be determined by the jury;

   b. Punitive damages in an amount to be determined by the jury; and

   c. Attorney's fees and costs.

4. On County IV:

   a. Actual and/or statutory damages in an amount to be determined by the jury;

   b. Attorney's fees and costs.

## JURY TRIAL

With regard to the above causes of action, Plaintiff respectfully requests a trial by jury on

all issues so triable.

Respectfully submitted:

/s/ Thomas R Pycraft Jr.
Thomas R. Pycraft, Jr.
FL. Bar. No. 70366
service@pycraftlaw.com
tom@pycraftlaw.com
**PYCRAFT LAW, LLC**
2200 N. Ponce De Leon Blvd #10
St. Augustine, Florida 32084
Phone: (904) 940-0060
Fax: (866) 656-3282

_____

Adam Thoresen
FL. Bar. No.:0057675
**JACKSONVILLE AREA LEGAL AID, INC.**
126 West Adams St
Jacksonville, Florida 32202
Phone: (904) 356-8371 ext. 202
Adam.thoresen@jaxlegalaid.org
jalaconsumer@jaxlegalaid.org

# EXHIBIT A

## LEASE AGREEMENT

NOTICE: Florida Residential Landlord and Tenant Act established rights and obligations for parties to rental agreements. This agreement is required to comply with Florida Residential Landlord and Tenant Act, Chapter 83 Part II. If you have a question about the interpretation or legality of a provision of this agreement, you may want to seek assistance from a lawyer or other qualified person.

1. This Lease Agreement ("Lease") is made this 1ˢᵗ day of November, 2016 between the Lessor Preserve at Cedar River LP ("Landlord") whose address for the purpose of notice under Florida Tenant Act Statute 83 is 4301 Confederate Point Road, Jacksonville, FL 32210 and the Lessee Rhonda Jones and Malik Francis("Resident").

2. Landlord leases to Resident 4207 Confederate Point Road #148("Premises") in the apartment community commonly known as Preserve at Cedar River Apartments..

3. PURPOSE: Resident to occupy the Premises as a private dwelling.

4. OCCUPANCY: Only the Resident(s) and the following individual(s) listed below may occupy the Premises. The Resident agrees to permit other individuals to reside in the Premises only after obtaining the prior written consent of Landlord.

    1._____
    2._____
    3._____
    4._____
    5._____

5. ASSIGNMENT AND SUBLEASE: Resident shall not assign the Lease nor sublet the Premises without first obtaining Landlord's written consent.

6. TERM: This Lease shall be for 12 full months beginning the first day of November, 2016 and expiring the last day of October, 2017. If either party elects to have this Lease terminate and expire at the end of the Lease term, they must give written notice to the other party sixty (60) days prior to the end of the Lease term. Resident shall be a Resident from month to month if Resident continues in possession after the end of this Lease. If Resident holds over, Resident shall give to Landlord thirty (30) days written notice in advance to terminate residency. If Resident holds over, all conditions of this Lease remain in effect except as to the term (month to month) and the amount of the rent due. Resident agrees that his/her liability to pay rent provided herein continues for the full calendar month following the month in which he/she gave notice and agrees to pay said amount. Resident will always be charged through the end of a full calendar month, whether on a month-to-month basis or a lease term.

7. RENT: During the term of this Lease, Resident shall pay $990.00 on the first day of each month, payable to Preserve at Cedar River Apartments commencing with the beginning date of this Lease. The Resident must pay rent in the leasing office. Additional rent of fifty dollars ($50.00) shall be added if the rent is not received on or before the third (3rd) day of the month for which the rent is payable. Additional rent of fifty ($50.00) shall be added if the rent is not received on or before the seventh (7ᵗʰ) day of the month for which rent is due.   In the event Landlord receives a check from Resident that does not clear for any reason, then there will be a fifty dollar ($50.00) NSF charge assessed to the Resident plus the above described two fifty dollars fees both to be considered additional rent. Resident must ensure that funds are available in Resident's bank account at the time the check is submitted for payment to the rental office. All payments made after the fifth day of each month must be in the form of money order or cashier's check only. Cash payments are never accepted. If Resident fails to pay rent or any other sums when due to Landlord, Landlord shall serve a Demand for Possession- Nonpayment of Rent notice on Resident as required by law, and if Resident fails to remit the amounts due before the notice period expires, the amount of the court costs and attorneys fees incurred by Landlord in enforcing Landlord's remedies and allowed by statute shall be added to the amount of the arrearage.

8. UTILITIES: The rent includes the following utilities: Water, Trash Removal, Pest Control. Electricity shall be furnished and paid for by Resident. Resident agrees to transfer the electric utility service into their name at the time of move-in and to keep it turned on, paid in full, and to not discontinue or interrupt the electric utility service during their residency. Resident will be charged directly, or by our Utility Billing Company, for applicable electricity which is not transferred to Resident's own name, in addition to administrative fees (per occurrence and per utility type) effective the date of move-in. Failure to maintain electric utility service will be deemed a health hazard and may result in eviction proceedings. Resident agrees to pay $55.00per month as their portion of the Water / Trash / Pest bill, included in the rental amount shown in paragraph 7 above. Landlord will consider any unpaid utilities as additional rent owed.

9. SECURITY DEPOSIT: At the same time this Lease is signed, Resident will deposit $0.00("security deposit") with Landlord which may be used only for the purposes permitted under Florida Statutes Act, Chapter 83. It is specifically understood that the aforesaid security deposit shall not be considered prepaid rent. The fact that Landlord holds the security deposit shall not affect its

right to obtain possession of the Premises for non-payment of rent or for any other reason permitted by law. To the extent that the security deposit is not applied in the manner permitted by Florida Statutes Act, Chapter 83, it shall be returnable to the Resident.

10. **A. INSURANCE:** Landlord does not provide any insurance coverage for the property of Resident. To the extent permitted by law, Landlord and Landlord's agents shall not be liable for any damage to property or loss of property that is caused by theft, the acts or omissions of other Residents or casualty on the Premises including, but not limited to, bursting, stopping, backing up, or leaking of water, gas, electricity, or sewers caused in any manner whatsoever. Landlord recommends that Resident obtain Renter's Insurance in an amount sufficient to cover the property of both Resident and Landlord.

**B. FIRE SAFETY:** Smoke detectors can save lives if Residents use them properly. Upon move-in, the smoke detectors will be in good working order. During tenancy, Resident is responsible for periodic testing and replacement of batteries. This should be done at least annually. If Resident cannot do this, or if the smoke detector fails to respond when tested, Resident shall contact the Landlord's office and the Landlord will install the batteries or make necessary repairs. Never disconnect a smoke detector. Resident will be held liable for damages or injuries that result from a disabled smoke detector.

**C. RADON GAS:** We are required by Florida Statute 404.046 (8) to give the following notification to you. "Radon" gas is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present a health risk to persons who are exposed to it over time. Levels of Radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding Radon and Radon testing may be obtained from your county health unit.

**D. TENANT WAIVER OF LANDLORD DUTY TO CARE FOR ABANDONED PROPERTY OR TENANT; UNPON SURRENDER.** Abandonment or recovery of possession of the dwelling unit due to the death of the last remaining tenant, tenant hereby releases Landlord and all its agents from any and all liability and responsibility whatsoever regarding the storage of, or disposition of the Resident's personal property pursuant to Florida Statute 83.

11. **USE OF PREMISES:** Resident shall use and occupy the Premises in such a manner as will comply with all public health and police regulations, statutes and ordinances. Resident, any member of the Resident's household, guest or other person under the Resident's control shall not engage in or permit any illegal activity, including drug related criminal activity, prostitution, criminal street gang activity, threatening, intimidating, or assault, including but not limited to, the unlawful discharge of firearms within the apartment community, or any breach of the Lease Agreement that otherwise jeopardizes the health, safety and welfare of the Landlord, its agents, Residents, guests, invitees or involving imminent serious property damage. Any violation of this provision may result in the immediate termination of the Lease Agreement.

12. **ALTERATIONS:** Resident shall not alter or decorate the Premises or install any fixture or equipment without Landlord's prior written consent. All alterations, additions, or improvements upon demised Premises, made by either party shall become the property of Landlord, and shall remain upon, and be surrendered with said Premises as a part thereof (including locks and bolts) at the end of the Lease term thereof. Resident shall not use contact paper or wall paper on walls or shelving in the demised Premises without the written consent of the Landlord, and further agrees to remove same at their own cost and expense at the termination of this Lease or any renewal thereof. No furniture filled with a liquid or semi-liquid substance shall be brought in or used in the demised Premises.

13. **ACCESS TO PREMISES:** Landlord shall have reasonable access to the Premises to the extent permitted by law, to inspect said Premises or for any purpose connected with the repair, improvement, care and management of said demised Premises.

14. **EARLY TERMINATION:** Resident may terminate the Lease before the expiration of the original Lease expiration date, or any renewals thereof, providing all of the following conditions are met:
    A. Resident must give sixty (60) days written notice to the Landlord, and pay rent through the end of the sixty (60) day notice period:
    B. Resident must pay a termination fee equal to two (2) times the monthly rental rate in effect at the time of termination. This termination fee is in addition to rent and other fees owed through the notice period and is payable prior to move-out:
    C. Resident must re-pay any leasing promotions and/or discounts he/she received during the current lease term. Such payments must be paid prior to move-out.

15. **RULES AND REGULATIONS:** Resident shall comply with all of the following rules and regulations governing the Premises and the apartment community together with all of Landlord's changes and additions to the rules and regulations that are permitted under Florida Statute 83 as amended.

    A. **Animals:** No dogs, cats, birds, reptiles, or other animals or pets shall be allowed on the Premises without prior written authorization of Landlord and applicable fees and deposits.
    B. **Antenna/ Satellite Dish:** No Satellite dish, radio or television antennae or wires shall be erected in or about any part of the Premises without the written permission of Landlord.
    C. **Automobiles:** All vehicles must have current year license plates and must be operable. No car repairing or washing shall be done at any time in or about the Premises. Resident vehicles must be currently registered with the Leasing Office.
    D. **Awnings, Screens, Blinds:** No awnings or other protection shall be attached to or protrude beyond the outside walls of the building, and no blinds, shades or screens shall be attached to or hung in or used in connection with any window or door of the demised Premises without the prior written consent of the Landlord.
    E. **Barbecuing:** Use of barbecuing equipment is not permitted on the Premises except in designated areas, if provided. No barbecues, whether gas or charcoal, are to be used on the patios or balconies.
    F. **Defects:** Immediately upon discovery of, or upon reasonable opportunity to discover, defects in gas, water or steam pipes, or in electric wires, notice shall be given by Resident to Landlord. Resident agrees to notify Landlord of any deficiencies including, but not limited to, smoke alarms, signs of water infiltration, mold, water leaks, or burst pipes both within and about the Premises.

G. **Entrance Use:** All damages to the building caused by the moving or carrying of articles therein, shall be paid by the Resident or person in charge of such articles.

H. **Equipment Moving:** No equipment may be moved from any part of the building. All equipment must be permanently retained in its original location.

I. **Falling Objects:** No Resident shall allow anything whatsoever to fall from the windows, doors, or balconies of the demised Premises, nor shall any Resident sweep or throw from the demised Premises any dirt or other substance into any of the corridors, halls, light shafts, ventilators or elsewhere in or around the building.

J. **Identification:** Landlord may exclude from outside areas or common areas anyone who refuses to show photo identification or refuses to identify himself or herself as a Resident, occupant, guest or invitee or a Resident in the community.

K. **Inflammable:** The storage or use of kerosene, gasoline, or other inflammable or explosive materials is prohibited. Resident acknowledges only artificial Christmas trees will be permitted in the apartment.

L. **Lawns, Lounging, Playing:** No personal property of any kind shall be placed or kept on the lawns, sidewalks, porches, drives or any open area, nor shall such areas be used for lounging, playing or any other activities, except as approved by Landlord.

M. **Locks and Keys:** The Landlord may retain a pass key to the Premises. The resident will not alter any lock or install any doorknocker on the door to the Premises or on any interior door. If it is necessary for the Landlord or others to enter the Premises because of an emergency, and damage occurs in entering because of the Resident altering or installing any locks, the Resident must pay for the damage. Resident shall return all keys when vacating or pay the cost of re-keying locks or replacement thereof. Until the keys are returned, Resident shall not be deemed to have vacated.

N. **Misuse of Apartment and Furnishings:** The apartment and furnishings shall be used only for the purposes for which they are intended. Any damages resulting from the misuse of such facilities shall be the responsibility of the Resident.

O. **Motorcycles:** No motorcycles are permitted on the Premises without written permission of Landlord.

P. **Noise, Music:** No excessive noise, music or disorderly conduct, or conduct annoying or disturbing to the occupants of the building, Landlord, or employee/agent of Landlord, shall be permitted in any part thereof.

Q. **Obstructions:** The sidewalks, entrances, passages, courts, vestibules, stairways, corridors and halls must not be obstructed or encumbered or used for any purpose other than ingress and egress to and from the demised Premises.

R. **Parking:** Except for automobiles, no vehicles (including motorcycles, trucks, boats and boat trailers, campers, travel trailers, commercial vehicles, motor homes) may be parked in the apartment community without prior written consent. All vehicles must be currently licensed and in good operating condition and must be parked only in the spaces provided for parking. No vehicle may be parked in front of dumpsters, blocking other vehicles, on the grass, in fire lanes, outside the boundaries of a single designated parking space, or in entrances or exits. Residents acknowledges that it is the Resident's responsibility to advise guests and invitees of the proper manner for the parking of their vehicles and that Resident further agrees to determine in each case that they have complied therewith. Any violations of the foregoing rules will subject the vehicle to being towed without notice at the owner's expense. Landlord may impose parking regulations including limiting the number of vehicles, which Resident and guests may park on the premise, requiring the use of parking decals on vehicles, and/or assigning parking spaces. To provide for proper maintenance of parking areas, cars must be moved at the written request of Landlord within 48 hours of the request.

S. **Private Work of Employees:** Residents are not permitted to ask employees of Landlord to do work of a private nature.

T. **Recreational Areas:** Use of the pool, fitness center and all recreational facilities and common areas is at your own risk. Residents agree to abide by all posted rules.

U. **Refuse:** Newspapers, cans and other refuse must be placed in containers provided by Landlord for that purpose and the container lid, if any, must be kept tightly closed at all times. Such containers must be maintained in accordance with applicable governmental regulations. All refuse must be suitably wrapped in plastic trash bags or equivalent type of containers.

V. **Signs:** No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Resident on any part of the outside or inside of the demised premise of building.

W. **Sinks, Grease:** Pouring of grease into sinks or toilets is forbidden. All grease shall be disposed of with garbage in proper receptacles.

X. **Solicitation:** Door-to-door solicitation and distribution of literature and/or material is not permitted within the community. Resident agrees to notify the Leasing Office of any such solicitation. Resident may not conduct garage sales or other sales on the Premises.

Y. **Tampering with Apparatus:** Resident shall not interfere in any manner with any portion of the heating, air conditioning or lighting apparatus in or about the Premises or in or about the building.

Z. **Window Coverings:** Landlord will furnish interior window blinds for Premises to that the apartment community will have a uniform and consistent appearance. Resident expressly agrees that any personal window treatments will be placed on the inside of the blinds so as not to alter the exterior appearance of the apartment community.

AA.**Waste of Water:** The water shall not be left running any unreasonable or unnecessary length of time. Resident shall report all water leaks to the Landlord.

BB.**Window Sills, Air Conditioning:** Window sills shall be kept free from all personal property. No additional air conditioning unit can be installed without written consent of Landlord.

CC.**Landlord-Right to Make Further Rules:** Landlord shall have the right to make such other and further reasonable rules and regulations as in his judgment may from time to time be needed to protect the physical health, safety or peaceful

enjoyment of Residents or guests. Said change in rules will be made by written notice of not less than thirty (30) days.

16. **ACTS OR OMISSIONS:** Landlord and its employees or agents or any of them shall not be responsible or liable to the Resident or his invitees for any loss or damage that may be occasioned by or through the acts or omissions of other Residents, their guests or invitees occupying any other part of the building of which said rented Premises are a part, or of persons who are trespassers in said building, or for any loss or damage resulting to the Resident or his property from bursting, stoppage, backing up or leaking of water pipes or sewer pipes caused in any other manner whatsoever. Landlord, its employees or agents or any of them shall not be liable to Resident or his invitees for any loss whatsoever which Resident or his invitees may sustain by way of damage to personal property growing out of any cause or causes whatsoever, including by way of example, without limiting the generality of the foregoing, loss suffered by fire, regardless of origin, loss from wind, rain or other elements. The foregoing shall not be construed as a waiver of any liability in the event the loss or damage is the result of failure to perform or negligent performance of a duty imposed by law.

17. **ADDITIONAL AREAS:** It is expressly understood and agreed by the Resident that if Landlord shall furnish any automobile parking space, recreational area or any other facility, outside of the residence herein expressly demised to the Resident, if any person shall the use same, such person does so at his or her own risk and upon the express understanding and stipulation that Landlord shall not be liable for any loss of property through theft, casualty, or otherwise, or for any damage or injury to person or property, except the foregoing shall not be construed as a waiver of liability in the event that the loss or damage is the result of a failure to perform or a negligent performance of a duty imposed by law.

18. **DELAY IN REPAIRS:** It is expressly understood and agreed that whenever repairs to be made by Landlord shall be delayed because of factors beyond its control, the obligation of the Resident hereunder shall not be affected whatsoever thereby, nor shall any claim accrue to the Resident against the Landlord, or its assigns, by reason thereof.

19. **ABANDONED PROPERTY:** If Resident shall vacate or abandon the demised Premises and leave any personal property either in the demised dwelling or anywhere about the building, its courtyards or other part of the Premises then such property shall be deemed abandoned by the Resident.

20. **POSSESSION AND DELAY:** Resident shall not be entitled to possession of the dwelling demised herein or any part thereof until the full payment of the security deposit and the first month's rent. It is understood that if Resident shall be unable to enter into occupancy of the Premises hereby leased by reason of said Premises not being ready for occupancy or by reason of the holding over of any previous Resident or occupant of said Premises Landlord shall not be liable for damages to the Resident therefore, but during the period Resident shall be unable to occupy said Premises the rental therefore shall be abated and the term of this Lease shall be extended for a period of time equal to the delay encountered by Resident in taking possession. Landlord shall incur no liability for delay encountered by Resident in taking possession. Landlord shall incur no liability for delay encountered by Resident in taking possession and shall be the sole judge of when the Premises are ready for occupancy.

21. **FLOOR COVERING:** Resident shall be responsible for the maintenance of all floor covering and carpeting which has been provided by Landlord. Maintenance includes having carpeting professionally cleaned by a reputable cleaning firm.

22. **APPLICATION FOR RESIDENCY:** Landlord has entered into this Lease relying upon the representations made by Resident in Resident's Application for Residency. In the event Landlord shall at any time discover any representations in said Application to be false, Landlord shall have the continuing option to terminate this Lease on 30 days written notice to Resident and recover possession through the appropriate legal proceedings.

23. **ACCORD AND SATISFACTION:** No payment by Resident or receipt by Landlord of a lesser amount than the monthly rental herein stipulated shall be deemed to be other than on account of the earliest stipulated rent nor shall any endorsement of statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such a check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy provided for under the terms of this Lease, or by law.

24. **NOTICE TO REPAIRS/ ACCOMMODATIONS:** In order that Landlord may be able to affect repairs/accommodations efficiently and economically, Resident agrees that any demand for repair/accommodation shall be in written form and that any such notice shall include all repairs/accommodations deemed necessary by Resident at the time of such notice. Such notice shall state in specific terms the repair/accommodation requested and if more than one repair is included, such notice shall state the priority of importance to Resident of the repairs listed. All requests for reasonable accommodation or reasonable modification will be considered.

25. **DAMAGE BY FIRE OR OTHER CASUALTY:** If the Premises are partially damaged by fire or other casualty but can be restored to tenantable condition Landlord shall repair the Premises with reasonable dispatch. The Resident's obligation to pay rent shall be suspended during the time that Premises remain untenantable. If the Premises are destroyed by fire or other casualty or if the Premises cannot be restored to tenantable condition within a reasonable time, either party shall have the right to terminate this Lease by 7 day written notice to the other party.

26. **CONDITION OF PREMISES:** Resident acknowledges that they have examined the Premises prior to signing this Lease, that no representations as to the condition or state of repairs thereof have been made by Landlord which are not herein expressed and Resident acknowledges that Premises and equipment in the unit are in good working order except as described on Resident's Commencement Inventory. Resident also acknowledges that Landlord has made no promises to decorate, alter, repair, or improve the unit except as stated herein or elsewhere in writing. Resident further agrees that during the continuation of their occupancy of the Premises to keep same in good repair and at the expiration of the term, yield and deliver up same in the condition as when taken, reasonable use and wear thereof alone excepted.

27. **NOTICE OF INJURIES:** In the event of any injuries to the Resident, their family, or their guest's, or damage to any property of the Resident, their family, or their guest's through the negligence of Landlord, its agents, and/or employees, the Resident agrees to

give Landlord a written notice of the occurrence of said injury or damages immediately. Said notice must be in writing and delivered to Landlord.

28. **JOINT LIABILITY:** In the event this instrument shall be executed by more than one person then the liability of the persons so signing shall be joint, and several and a judgment entered against one shall be no bar to an action against the others.

29. **EMINENT DOMAIN:** If any part of the Premises is condemned by any governmental authority, then the Lease shall terminate as of the date that possession is taken by the government by the governmental authority.

30. **DEFAULT:** If Resident fails to pay the rent or otherwise defaults in obligations owing under this Lease, then Landlord shall be authorized to repossess the Premises and evict the Resident. If this shall occur, or if Resident shall vacate prior to the end of the Lease term or otherwise defaults in obligations owing under the Lease, Resident shall pay to Landlord the expenses incurred in obtaining possession of the Premises to the extent permitted by law, including but not limited to court cost and attorney fees and further Resident shall be responsible for all other damages including rent for the unexpired term of this Lease or renewal thereof.

31. **REMEDIES NOT EXCLUSIVE:** Each of the rights provided by this Lease shall be cumulative.

32. **SEVERABILITY:** If any provision of this Lease shall be or become invalid, such invalidity shall not in any way affect any of the other provisions of this Lease which shall continue to remain in full force and effect.

33. **WAIVER:** If Landlord shall waive any provision of this Lease it shall not be construed as a waiver of a further breach of such provision.

34. **MODIFICATIONS:** No modification of this Lease shall be binding unless in writing signed by both parties, except as it relates to a rule change as provided in paragraph 12CC.

35. **QUIET ENJOYMENT:** Upon Resident paying the rent and performing all of the other provisions of this Lease, Landlord agrees that Resident shall peacefully and quietly have, hold and enjoy the Premises during the term of this Lease.

36. **TRUTH IN RENTING ACT (MCL 554.631 to 554.641) PROVISIONS:** Landlord and Resident specifically agree this Lease shall not, is not intended, nor shall it be construed, to violate any of the provisions of the Truth in Renting Act. If however, any provision of this Lease does in fact reach any such result, then such provision shall be null and void but the other provisions of this Lease shall continue to remain in full force and effect.

37. **CAPTIONS:** The captions in this Lease are inserted only as a matter of convenience.

38. **LEASE BINDING:** The provisions of this Lease shall be binding upon and shall be for the benefit of Landlord and Resident and their successors in interest.

39. **DAMAGES CAUSED BY RESIDENT NEGLIGENCE:** Anything herein to the contrary notwithstanding, Resident agrees to be liable to Landlord or Landlord's insurance carrier in tort for negligently caused damages. Resident by execution of this Lease acknowledges said liability and further acknowledges that said liability exists notwithstanding the fact that Landlord may have insurance to cover all or part of said loss.

40. **SUBORDINATION:** The Landlord reserves the right to subject and subordinate this Lease at all times to the lien of any mortgage or mortgages now or hereafter placed upon the Landlord's interest in said Premises and on the land and buildings of which the said Premises are a part or upon any buildings hereafter placed upon the land of which the Premises form a part. At Landlord's request Resident shall execute and deliver such documents as may be required in order to accomplish the purposes of this paragraph.

Resident Signature

Malik Francis
Resident Signature

Resident Signature

Resident Signature

Landord Representative Signature

11 3 16
Date

RHONDA JONES
Resident Print

Malik Francis
Resident Print

Resident Print

Resident Print

April Knehr
Landlord Representative Print



08/02 /2017

Dear Resident(s): Rhonda Jones & Malik francis
4207 Confederate Point Rd Apt 148B.

We would like to take this time to thank you for choosing Preserve at Cedar River Apartments as your home for the last year. It is now time for your lease to be renewed and we are hoping that you will continue to reside in our lovely community.

According to your lease agreement, your lease shall expire on **10/31/2017.** Management would like to give you some options.

Please read and mark off the appropriate selection below or your lease shall terminate on the above date and you must vacate at that time.

Option 1._____We would like to remain on the premises as Month to Month Resident(s) at the rental rate of $1,110.00 per month. This includes an Increase of $55.00 for your monthly water rate.

Option 2.__✔__We will not be renewing and vacate the premises on the above date.

Option 3._____ We wish to sign a new one-year lease agreement at a rental rate of $1,010.00 per month. This includes an increase of $55.00 for your monthly water rate.

Option 4._____ We wish to sign a new seven-month lease agreement at a rental rate of $1,060.00 per month. This includes an increase of $55.00 for your monthly water rate.

Please return this to Management no later than **60 days prior to your lease end** or your lease shall be deemed terminated at the end of the lease agreement and you shall owe Management the **"failure to give proper notice fee"** as per your lease agreement in addition to any amount due from you at that time according to the lease and/or Florida Law.

This offer by Management may be withdrawn at any time and for any reason by Management prior to Management and Resident(s) written acceptance of this offer by signatures of Management below and Resident(s) below and Management fully executing a Lease Renewal or new lease if Resident(s) chose options 3 or 4.

| | | | |
|---|---|---|---|
| Resident | 8·23·17 Date | Resident | Date |

| | |
|---|---|
| Management | Date |

DEPT 855      7240937118043
PO BOX 4115
CONCORD CA  94524

|||||||| |||||| |||| ||| |||| |||| ||| |||| ||||| ||| |||| || ||||| ||| |||| ||| ||| |||| |||| ||| |||

# National Credit Systems, Inc

P.O. Box 312125 Atlanta, GA 31131-2125
Phone: (404) 629-2728
Toll Free: (800) 459-1539

ADDRESS SERVICE REQUESTED

||||||||||||||||||||||||||||||||||||||||||||||||||||||||

RHONDA ANNETTE JONES
1311 PHILLIPS ST
FLEMING ISLAND FL 32003-4526



Use QR code to gain
immediate access for payment.
www.nationalcreditsystems.com

Current Creditor:  PRESERVE AT CEDAR RIVER APTS / 148          April 4, 2018
Account #: 3763693
Balance:  $375.86

Dear RHONDA ANNETTE JONES,

We regret that you have failed to make suitable arrangements concerning the above referenced obligation.

Be advised, we are processing this account for placement on your credit history with all three national credit bureaus.  If so reported, your ability to obtain credit, rent, or secure favorable interest rates may be affected for seven years from the date of delinquency.

However, it is not too late for us to place a hold on your account if you act now.  You may be able to avoid adverse credit reporting entirely if we can work out a reasonable arrangement.

Our representatives will take your individual situation into consideration.

We urge you to contact our office before this debt is placed on your credit record and to avoid other collection remedies available under the law.

Cordially,

DONNA RICHARDSON
Collection Representative
404-214-4990  888-271-4278

Please direct all correspondence to:
NATIONAL CREDIT SYSTEMS, INC., PO Box 312125, Atlanta, GA 31131-2125

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

# Jacksonville Area Legal Aid, Inc.

*A Wealth of Justice for Those Who Have Neither*

222 San Marco Avenue
St. Augustine, FL 32084
(904) 827-9921
FAX: (904) 827-9978

126 W. Adams Street
Jacksonville, FL 32202-3849
(904) 356-8371
FAX: (904) 224-1587

P. O. Box 1999
Green Cove Springs, FL 32043
(904) 284-8410
FAX: (904) 284-8485

June 28, 2018

National Credit Systems, Inc.
P.O. Box 312125
Atlanta, GA 31131

**Re:** **Dispute, Notice of Representation and Request for Verification, Account # 3763693, Rhonda Annette Jones, Original Creditor Preserve at Cedar River Apts.**

Dear Sir or Madam:

This office has the pleasure of representing Ms. Rhonda Jones with respect to the above debt. Please let this letter serve as a dispute of the $375.86 debt claimed due by NCS and the Preserve at Cedar River Apartments. Please speak with Preserve at Cedar River and provide verification of all sums claimed due. Specifically, what is the nature of these charges? Ms. Jones moved out of the Preserve at the end of her lease and did not owe any money for rent or other damages. I also do not have any evidence the Preserve ever sent Ms. Jones the written notice required by Florida Statute §83.49.

Do not take any further steps to collect on this debt, including, but not limited to, any credit reporting until such time as the debt has been verified. I appreciate your prompt attention to this matter.

Sincerely,

Adam C. Thoresen

Enc/
CC/   Client




